*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| VIOLET C., | ) |
| | ) Supreme Court Nos. S-17038/17066 |
| Appellant, | ) (Consolidated) |
| | ) |
| v. | ) Superior Court No. 3PA-15-00169 |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) O P I N I O N |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 7339 – March 1, 2019 |
| | ) |
| Appellee. | ) |
| | ) |
| | ) Superior Court No. 3PA-15-00170 |
| JACK C., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant Violet C.; Carolyn Perkins, Salt Lake City, Utah, for Appellant Jack C.; Mary Ann Lundquist, Senior Assistant

Attorney General, Fairbanks, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maasen, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

The superior court terminated a mother's and father's parental rights, finding their two children were in need of aid based on abandonment, incarceration, risk of domestic violence, and substance abuse. The court also determined that the Office of Children's Services (OCS) had satisfied its duty to make reasonable efforts to reunify the parents and children. The mother and father separately appealed the court's reasonable-efforts determinations, and the mother also appealed the court's findings that the children were in need of aid based on abandonment and domestic violence. We consolidated the appeals for consideration and decision. Seeing no reversible error, we affirm the superior court's decision to terminate the mother's and father's parental rights.

## II. FACTS AND PROCEEDINGS

Violet C. and Jack C. are the separated biological parents of Maggie and Doug, eight-year-old twins.[1] Jack was in a different state for the entirety of the case and incarcerated for its majority.

### A. Initial Reports And Removal

In early August 2015 OCS received a report alleging that Violet was addicted to substances and abusing alcohol. An OCS caseworker visited the home, found no safety threats, and left without taking action. The caseworker returned a few weeks later after receiving renewed reports of harm. During this visit Violet's

---

[1] We use pseudonyms to protect the family members' privacy.

grandmother relayed concerns about Violet leaving the home and returning under the influence; the grandmother reported that Violet bullied her by beating on the door and yelling, and that Violet had once kicked a hole in the door. Violet's grandmother also reported that Violet once "grabbed [Maggie] by the arm and yanked her up and hauled her out" of a bedroom.

The OCS caseworker observed that Violet had sores on her face and legs, that she presented with jerky movements, and that she continually paced and turned during their conversation. Violet refused to allow OCS to assess the children or create a protective action plan, but she agreed to participate in urinalysis and hair follicle tests, which later yielded positive drug results.

OCS assumed custody of the twins in late August and filed for their adjudication as children in need of aid shortly thereafter.

**B.     OCS's Case Plan And Early Reunification Efforts**

In September Violet notified OCS that she has hearing and mobility impairments; due to her disabilities, she requested transportation funding, patience in communication, and prioritization of in-person and email contact. OCS arranged for transportation services to visitation, parenting classes, treatment, and drug testing. OCS initially provided Violet taxi vouchers through mid-October. Before approving further taxi vouchers, it required documentation of her disabilities, which Violet did not provide until the following March. In the interim OCS arranged for third-party transportation services beginning in December. Violet did not fully utilize these services; testimony detailed multiple occasions when she was unavailable for transportation she had previously arranged.

OCS's November 2015 case plan required Violet to submit to random urinalysis tests, obtain a substance abuse assessment, follow treatment recommendations, and participate in parenting classes and mental health services. The case plan made no

mention of Violet's disabilities or accommodation requests, instead noting that she was "physically able" and "possesse[d] adequate energy."

Violet inconsistently participated in supervised visitation. Visitation temporarily ceased in January 2016 due to her "excessive absences." She maintained telephonic contact with the twins, and OCS asked their foster parent to identify each voice and ensure they were not on the phone at the same time.

When OCS formulated Jack's case plan, he had recently been released from incarceration in Florida and relocated to Texas. He expressed an interest in having custody of the children. OCS's case plan required Jack to complete a substance abuse assessment and obtain treatment, participate in parenting classes, and obtain a psychological assessment. OCS worked with local providers to arrange the assessments.

Jack never notified OCS that he had trouble accessing services, and he later acknowledged that he "did not participate in these services." An OCS caseworker testified that she was unable to begin the process for placement with Jack under the Interstate Compact on the Placement of Children (ICPC) because he had only recently been released from jail, moved to a new home, and needed to first engage in services.

After losing contact with Jack, OCS became aware at the adjudication hearing of his reincarceration. OCS often had trouble contacting Jack, unsuccessfully attempting to contact him at the telephone number he provided, through his attorney, and through the jail itself.

In April 2016 the superior court issued its adjudication order, finding that Maggie and Doug were children in need of aid based on Jack's abandonment and incarceration and Violet's substance abuse. The court found that OCS had provided reasonable efforts to Jack but that OCS had not made reasonable efforts to provide Violet remedial services and allow the children to return to her care from September 2015 through February 2016. The court stated that OCS "viewed [Violet's] documented

disabilities with skepticism, required outside verification of her disabilities, formulated a case plan not tailored to her needs, failed to accommodate [her] request for important information to be conveyed in writing, and cut off transportation and service referral funding in response to less-than-perfect performance."

But the court also found that OCS had provided Violet reasonable efforts since March 2016, "after transportation assistance resumed and [OCS] made better efforts to communicate" with her. The court found that around February 2016 OCS was able to obtain a transportation grant allowing Violet to attend visitation, a drug assessment, mental health appointments, and other services. The court therefore ordered the children placed in OCS's temporary custody.

## C. Post-Adjudication Conduct; Trial

A new OCS caseworker was assigned to the case in October 2016. This caseworker met with Violet in person, ensured that Violet could read her lips, and communicated through text messages. By that point Violet had been discharged from treatment programs several times for noncompliance.

As of January 2017 Violet was involved with Sam. Sam has a history of both substance abuse and domestic violence, including a conviction for third-degree assault against an ex-girlfriend. He has twice violated his probation for failing to engage in a domestic violence intervention program and failing to report to his probation officer. Violet became pregnant with Sam's child in mid-2017. Although OCS referred her to a sober housing center, she refused to enter because Sam's domestic violence history prevented him joining her. They instead lived in Violet's often non-drivable van.

The termination trial took place over three days in February and March 2018. Although Violet regularly participated in drug tests for a few months prior to trial, yielding negative results except for one dilute sample, she earlier had failed to participate in urinalysis tests between April and September 2017. She completed a parenting class

in April 2017 as required by her case plan, but she still needed to complete the plan's other aspects, including to secure appropriate housing, be consistent in her urinalysis tests, complete an inpatient substance abuse and after-care treatment program, and demonstrate sustained sobriety for at least six months.

Between the adjudication order and termination trial, Jack again had been released on supervised parole. But by the time of the termination trial his parole had been revoked for drinking, failing to report, traveling outside of an approved county, failing to perform community work service, failing to pay fines, and failing to complete a treatment program. Jack believed, but provided no evidentiary support, that he would be released from prison shortly after the termination trial.

Jack had completed anger management, drug rehabilitation, and parenting classes through the Texas Department of Corrections. Jack acknowledged that at the time of the termination trial he was not having regular telephonic contact with the twins. The foster parent testified to the twins' difficulty identifying their father and said they refer to him by first name rather than "dad."

In March 2018 the court issued its order terminating Violet's and Jack's parental rights, finding the twins to be children in need of aid under AS 47.10.011(1) (abandonment), (8) (risk of exposure to domestic violence by Sam), and (10) (substance abuse) based on Violet's conduct, and under subsections (1) (abandonment), (2) (incarceration), (8) (risk of exposure to domestic violence), and (10) (substance abuse) based on Jack's conduct.

The court stated that Violet "failed to complete a suitable case plan" and that she "inconsistently visits" the twins. The court noted she had "not demonstrated sustained stability and sobriety and ha[d] used substances within the past year. [Her] ability to parent has been substantially impaired by the addictive or habitual use of drugs, resulting in a substantial risk of harm to the children."

The court entered findings regarding OCS's efforts to provide Violet transportation services, written instructions, in-person meetings, referral funding for access to services, a peer navigator, and frequent communication. The court found specifically that "[w]hen taxi cab vouchers were made available to her, [Violet] chose not to use them." The court found that Violet "often had a working vehicle and friends would drive her to appointments." The court found that Violet had not remedied the conduct placing the children at substantial risk of harm and that termination of her parental rights was in the twins' best interests.

The court found that Jack had not remedied the conduct that put the twins at risk, pointing to Jack's lack of relationship or contact with his children. The court found that he also had "not demonstrated sustained stability and sobriety" and had "made minimal efforts to communicate and support the children." The court acknowledged that both parents "sincerely love" the children but found that termination was in the children's best interests.

Violet and Jack both appeal. Violet contends that the court erred by finding the twins were children in need of aid under AS 47.10.011(1) (abandonment) and (8) (domestic violence) and determining OCS made reasonable efforts to reunite her with her children. Jack contends that the court erred by determining OCS made reasonable efforts to reunite him with his children.

## III.   STANDARD OF REVIEW

Violet's appeal of fewer than all of the court's relevant child in need of aid findings raises the issue of mootness. "Because it is a matter of judicial policy, mootness presents a question of law" to which we apply our independent judgment.[2]

---

[2]    *Jennifer L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 357 P.3d 110, 113 (Alaska 2015) (quoting *Peter A. v. State, Dep't of Health &*
(continued...)

" 'Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact.' For mixed questions, 'we review factual questions under the clearly erroneous standard and legal questions using our independent judgment.' "[3] "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the party prevailing below leaves us 'with a definite and firm conviction that a mistake has been made.' "[4]

## IV.    DISCUSSION

### A.    Because Violet Does Not Contest The Superior Court's Finding That The Twins Were In Need Of Aid Based On Substance Abuse, We Decline To Consider The Court's Alternative Findings.

#### 1.    Violet does not challenge the superior court's finding under AS 47.10.011(10).

To terminate a parent's rights and responsibilities, the superior court must find by clear and convincing evidence that the children have been subjected to conditions that would qualify them as children in need of aid under one of the subsections of AS 47.10.011.[5]    Violet challenges the court's findings under subsections (1) (abandonment) and (8) (domestic violence).  But because only one child in need of aid finding is necessary based on our case law — and Violet does not challenge the

---

[2]    (...continued)
*Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 993-94 (Alaska 2006)).

[3]    *Kylie L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 407 P.3d 442, 448 (Alaska 2017) (quoting *Joy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 382 P.3d 1154, 1162 (Alaska 2016)).

[4]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

[5]    AS 47.10.088(a)(1); CINA Rule 18(c)(1)(A).

court's finding under subsection (10) (parental substance abuse) — we need not consider Violet's challenges to the other findings.[6]

### 2. Violet's challenges to the superior court's alternative child in need of aid findings are moot.

Violet nonetheless asks us to vacate the superior court's alternative findings under subsections (1) and (8). Although her challenges are moot,[7] she urges that we address those findings because they "could be used as evidence against her" and "she would be precluded from challenging" them in a subsequent child in need of aid case. Without citing relevant authority, Violet suggests that the collateral consequences doctrine applies. But inability to obtain review of her claims on appeal means that she will not be precluded from challenging the court's findings in a subsequent case.[8] We

---

> [6] *See Rick P. v. State, OCS*, 109 P.3d 950, 956 (Alaska 2005) (noting it is unnecessary to consider other findings if record supports one ground for finding children to be in need of aid).
>
> [7] *See Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 994 (Alaska 2006) (" 'A claim is moot if it has lost its character as a present, live controversy.' If the party bringing the action would not be entitled to any relief if it prevails, there is no 'case or controversy' for us to decide." first quoting *Klevan v. Yukon-Koyukuk Sch. Dist.*, 853 P.2d 518, 523 (Alaska 1993); and then citing *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001))).
>
> [8] *See James G. v. Veronica G.*, No. S-11762, 2006 WL 204782, at *7-8 (Alaska Jan. 25, 2006) (noting general rule that case mooted pending appeal cannot be given preclusive effect, meaning collateral estoppel cannot be applied to child in need of aid finding if appellant cannot obtain appellate review of that finding; this rule protects the appellant's right to "obtain meaningful review on any issue that affects his rights" citing 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4433 (2d ed. 2002))); *but see Taryn M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-16326, 2017 WL 3122387, at *1 n.1 (Alaska July 19, 2017) (reviewing moot adjudication finding, without explanation, under collateral consequences doctrine).

(continued...)

therefore decline to apply the collateral consequences doctrine in this context.

### 3. Conclusion

Because Violet does not contest the superior court's child in need of aid finding under AS 47.10.011(10), and because we hold her challenges to the court's alternative findings moot, we affirm the court's determination that the twins were children in need of aid.

### B. The Superior Court Did Not Err By Determining That OCS Made Reasonable Reunification Efforts.

Violet and Jack separately challenge the court's determination that OCS made reasonable reunification efforts. Before terminating parental rights, the superior court must find by clear and convincing evidence that OCS has complied with the AS 47.10.086 provisions governing reasonable efforts.[9] That statute requires OCS to "make timely, reasonable efforts to provide family support services to the child and to the parents . . . that are designed to . . . enable the safe return of the child to the family home."[10] OCS's efforts must be "reasonable but need not be perfect."[11] "A parent's demonstrated unwillingness to participate in treatment may be considered in determining

---

[8] (...continued)

We also note — without considering its application to this case — the Restatement rule that even in cases where litigants fail to appeal, collateral estoppel does not apply when multiple grounds are each sufficient to support a judgment. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. i (1982) ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.").

[9] AS 47.10.088(a)(3); CINA Rule 18(c)(2)(A).

[10] AS 47.10.086(a).

[11] *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 678 (Alaska 2008) (citing *Jeff A.C., Jr. v. State*, 117 P.3d 697, 706 (Alaska 2005)).

the reasonableness of state efforts."[12]

The superior court found that OCS failed to provide reasonable efforts from September 2015 through February 2016 but that OCS had made reasonable efforts after that time. Violet contends that although "some failings had been cured by the time of the termination trial, not all were, resulting in a lack of reasonable efforts toward [her], contrary to the court's findings." Violet specifically points to OCS's failure to provide consistent transportation services. She argues that transportation issues — including a lack of reliable transportation because she lived in a non-drivable van and owned a car in need of repairs — made it "difficult to participate in programs, such as the random [urinalysis tests]." She argues that if OCS had offered "consistent assistance in transportation for services, her engagement level likely would have been more consistent and she might have been able to remedy her conduct in a timely fashion."

But we are not persuaded that OCS's failure to provide consistent transportation was the reason Violet could not comply with her case plan. The superior court found — and Violet acknowledges — that Violet failed to tell OCS about her transportation difficulties. Ultimately, although OCS's efforts to provide transportation may not have been perfect, they were reasonable.[13]

In addition to her general argument contesting the court's reasonable-efforts finding, Violet contests two specific fact findings: (1) that when "taxi cab vouchers were made available to her, [she] chose not to use them"; and (2) that she "often had a working vehicle and friends would drive her to appointments."

---

[12]     *Id.* (citing *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 991 (Alaska 2002)).

[13]     *Id.* (citing *Jeff A.C.*, 117 P.3d at 706).

In support of the first finding, the court cited a page of Violet's behavioral health records reporting that her "track record of keeping [appointments] even with approved cab vouchers is not good — she no-showed for the last two sessions when cab vouchers were authorized." Reviewing the record in the light most favorable to OCS,[14] we are not persuaded that the court clearly erred by inferring that Violet "chose" not to use the vouchers when they were available but unused.

The court supported the second contested fact finding — that Violet "often had a working vehicle and friends would drive her to appointments" — by citing termination trial testimony in which a friend recalled taking Violet to visitation. The friend stated that "if [Violet] needed to go someplace, then yes, I drove her." Violet concedes in her brief that the court did not err by finding she had a working vehicle and friends who could transport her: "To a limited extent, then, the trial court was correct that Violet was able, at times, to use other sources for help." We therefore see no clear error in the court's finding on this point.

Overall the superior court found that OCS provided numerous services to the family including transportation, written instructions, in-person meetings, referral funding for case management services, a peer navigator, referrals to parenting classes and substance abuse assessments, weekly supervised visits, and referrals for housing at a local shelter and residential treatment center. In light of these findings, we hold that the superior court did not err by determining that OCS made reasonable efforts to reunite Violet with her children.

Nor did the superior court err by determining that OCS made reasonable efforts to reunite Jack with his children. He argues that OCS failed to coordinate

---

[14]     *See Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (stating that we review fact findings in light most favorable to party prevailing below).

telephonic visitation with his children or start an ICPC process.

The "practical circumstances" of Jack's incarceration made it difficult for OCS to provide extensive services.[15]  Testimony detailed that OCS could not initiate an ICPC placement during the short time when Jack was not incarcerated because he had only recently been released from jail, moved to a new home, and needed to first engage in services; his later reincarceration would have rendered ICPC progress ineffectual.

OCS repeatedly and unsuccessfully attempted to contact Jack through the telephone number he provided, through his attorney, and through the Texas Department of Corrections where he was incarcerated.  OCS secured some services for Jack within his community when he was not incarcerated.  And OCS attempted to arrange telephonic visitation between Jack and his children and provide him with case management services. The court's determination that OCS provided reasonable efforts to reunite Jack with his children was therefore not erroneous.

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's termination of Violet's and Jack's parental rights.

---

[15]    *See A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999) (holding in ICWA context, where OCS bears higher burden of making "active efforts" to promote reunification, that "the practical circumstances surrounding a parent's incarceration . . . may have a direct bearing on what active remedial efforts are possible").