NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

JOSIAH M., )
)
               Appellant, )
)
    v. )
)
STATE OF ALASKA, DEPARTMENT OF )
HEALTH & SOCIAL SERVICES, OFFICE )
OF CHILDREN'S SERVICES, )
)
               Appellee. )
_____ )
JUDY P., )
)
               Appellant, )
)
    v. )
)
STATE OF ALASKA, DEPARTMENT OF )
HEALTH & SOCIAL SERVICES, OFFICE )
OF CHILDREN'S SERVICES, )
)
               Appellee. )
_____ )

Supreme Court Nos. S-17514/17563
(Consolidated)

Superior Court Nos. 4FA-17-00168/
00169/00170/00171 CN (Consolidated)

MEMORANDUM OPINION
AND JUDGMENT*

No. 1792 – September 30, 2020

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Jason A. Weiner, Gazewood & Weiner, P.C., Fairbanks, for Appellant Josiah M. Fleur L. Roberts, Law Offices of Fleur L. Roberts, Fairbanks, for Appellant Judy P.

_____

\*      Entered under Alaska Appellate Rule 214.

Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

## I. INTRODUCTION

The superior court terminated both parents' rights to four children after finding the children in need of aid due to the mother's substance abuse, neglect, and failure to protect them from sexual abuse, and due to the father's abandonment, neglect, and his risk of sexual abuse to his daughters. The court concluded that the Office of Children's Services (OCS) made reasonable efforts to reunify the family, that the parents failed to remedy the conditions that caused the children to be in need of aid, and that termination was in the children's best interests. The mother appeals the finding that she failed to remedy the conditions placing her children in need of aid and argues that the court erred by holding the termination trial before the children had been in foster care for 15 out of 22 months. The father appeals the reasonable efforts finding.

We affirm. The superior court did not err by making these findings and terminating parental rights. The court's factual findings are supported by the record, and the findings satisfy the requirements to terminate parental rights.[1]

---

[1] Alaska Statute 47.10.088(a) requires that in order to terminate parental rights a court must find by clear and convincing evidence that (1) the child is in need of aid under AS 47.10.011, (2) the parent has failed to remedy the conduct or conditions in the home placing the child in need of aid, and (3) OCS has provided reasonable efforts pursuant to AS 47.10.086.

## II.    FACTS AND PROCEEDINGS

### A.    Family Background

Josiah M. and Judy P. have four children together, two daughters and two sons.[2] After the parents separated, Josiah lost all contact with the children, who remained with Judy. He was convicted of attempted sexual abuse of a minor[3] and misconduct involving a controlled substance,[4] and was incarcerated from 2012-2016. Judy later married Derrick; they separated in 2016 but continued to see each other. Judy and the children lived with Judy's mother.

In the summer of 2017 the two daughters were interviewed at a child advocacy center. They described Judy driving when she was so sleepy they had to steer the car to keep it from swerving. One of them reported finding drug paraphernalia in Judy's car and under her mattress. Both girls also disclosed being sexually abused by Derrick; one of them said that she had told Judy, who had not done anything to stop it. The boys were interviewed after their older sisters. Both reported being mistreated by Derrick; one boy said that Derrick had left bruises on his arm.

Based upon the children's statements, OCS created a safety plan in August to keep the children in their grandmother's home. Judy was not allowed to drive with the children or be alone with them. She was also asked to participate in a urinalysis

---

[2]    Pseudonyms have been used to protect the parties' privacy.

[3]    Sexual abuse of a minor includes an offender 17 years of age or older who "engag[ed] in sexual contact with a person . . . 13, 14, or 15 years of age and at least four years younger than the offender." AS 11.41.438(a).

[4]    Alaska Statute 11.71.010(a)(2) includes delivery of any amount of methamphetamine (among other schedule IIA or IIIA controlled substances) to a person under 19 years of age and "at least three years younger than the person delivering the substance." *See* AS 11.71.150.

(UA) program to monitor her drug use. The safety plan was later amended to prohibit her from going to the grandmother's home and to limit Judy's contact with the children.

In September OCS filed a petition for custody of the children. The petition alleged they were in need of aid due to parental abandonment, neglect, and substance abuse, and had suffered physical harm, sexual abuse, and mental injury.[5] The petition alleged that Judy was abusing drugs, had exposed the children to drug paraphernalia and pornography, and failed to protect the girls from Derrick's sexual abuse.

In January 2018 Josiah stipulated that the children were in need of aid due to his abandonment; Judy stipulated in March that they were in need of aid due to her neglect. The court awarded custody of the children to OCS through January 2019. Because all of the children had significant medical, educational, and behavioral needs, OCS arranged individual counseling for each of them.

OCS also developed case plans for both parents. Judy obtained a substance abuse assessment with help from the assigned caseworker. She was diagnosed with methamphetamine use disorder, opioid use disorder, and cocaine use disorder, and was referred to outpatient substance abuse treatment as well as mental health therapy to address her past trauma. The caseworker included the assessment's recommendations, including required UAs, as well as vocational and housing assistance, in Judy's case plan. The caseworker advised Judy that she needed to keep her UA appointments to demonstrate her sobriety with clean results, and that missed appointments would be considered failed tests.

Judy failed to appear for many UA appointments and attended only three sessions of the recommended therapy. She blamed her lack of attendance on

---

[5] *See* AS 47.10.011(1) (abandonment), (6) (physical harm), (7) (sexual abuse), (8) (mental injury), (9) (neglect), (10) (substance abuse).

transportation issues, claiming she had been requesting bus passes from the wrong OCS employees until shortly before the trial when she was provided a pass. After Judy told the caseworker that she was uncomfortable with the counselor she was seeing, OCS arranged for another assessment with a different provider. Judy missed the appointment and did not reschedule it until the third day of the termination trial.

Because Josiah was on probation following his release from jail, he was participating in sex offender treatment through the Department of Corrections (DOC). The caseworker tailored Josiah's case plan to take advantage of the services being provided by DOC. The case plan required Josiah to comply with his probation; write cards and letters to the children that OCS would give to their therapists; work with the therapists' recommendations about contact with the children and learn to put the children's needs ahead of his own; and maintain employment and a safe and stable home.

OCS offered Josiah transportation and housing assistance for a trip from his home to Fairbanks for a placement review hearing, called and sent him text messages with information about his case plan, and contacted him "numerous" times about visitation. Because of his extended absence from the children's lives and his sexual abuse conviction, OCS limited Josiah's contact with the children to letter-writing until the children's therapists concluded that in-person contact was appropriate and could be arranged in a healthy and safe way. OCS also arranged for a secondary case worker to be assigned near Josiah's home, as the children's case was based in Fairbanks.[6]

---

[6] OCS took several months to act upon the request, but once a second caseworker was assigned, OCS reported that Josiah failed to respond to the local worker's calls. Josiah claims he did respond, but the court found him not credible; we defer to the court's credibility finding. *See Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012).

Josiah wrote one set of letters to the children. Although his case plan limited his contact with the children to letters, he traveled to Fairbanks and met with his eldest daughter. Because the trip to Fairbanks and contact with his daughter violated his probation conditions, Josiah's probation was later revoked and he returned to jail.

### B. Proceedings

In September 2018 OCS petitioned to terminate Josiah's and Judy's parental rights. The termination petition alleged the children were in need of aid under AS 47.10.011(1) (abandonment), (6) (physical harm), (7) (sexual abuse), (8) (mental harm), (9) (neglect), and (10) (substance abuse); neither Josiah nor Judy contested that the children were in need of aid due to parental neglect or substance abuse, but both of them argued that OCS had not made reasonable efforts to provide them with the services they needed.

The termination trial was held over four days in December 2018 and January 2019. Three OCS caseworkers testified, along with four of the children's therapists, the clinical director of a residential facility where one child was placed, the substance abuse counselor that had conducted Judy's initial assessment, Josiah's probation officer, and both parents. In June the superior court terminated Josiah's and Judy's parental rights in a written order.

The superior court found the children in need of aid due to Judy's substance abuse, neglect, and failure to protect them from sexual abuse; and Josiah's abandonment, neglect, and the risk of sexual abuse he posed to his daughters. The court found that OCS had made reasonable efforts to reunite Josiah and Judy with their children. It considered OCS's efforts toward each parent separately, beginning with Josiah. The court found that OCS had created a case plan and offered Josiah visitation with his children, beginning with contact by letter, and that caseworkers communicated regularly with him about his case plan and visits. The court concluded that the sex offender

treatment required by DOC was part of the services OCS offered Josiah. But the court noted that OCS's efforts were not perfect and that it had failed to consult two of the children's therapists about contact with Josiah.

It rejected Josiah's argument that OCS did not make reasonable efforts because it did not involve him in the children's therapy. The court found that immediate contact between Josiah and his children was "contra-indicated" because Josiah's long absence and his probation conditions required OCS to work toward establishing a relationship in a healthy way before permitting in-person contact, and that, according to their therapists, the children were not yet ready to participate in therapy with Josiah. The court specifically found that OCS's failure to contact two of the children's therapists about the prospect of increased contact did not detract from OCS's overall efforts "given the children's lack of readiness for family therapy and [Josiah's] less than token effort in writing to the children only once."

The court then turned to efforts directed to Judy, finding that OCS had created a case plan for her that included substance abuse and mental health assessments; UAs, and referrals for vocational rehabilitation; transportation assistance; and housing assistance. The court rejected Judy's arguments that OCS failed to do anything to work toward reunification, finding that OCS had provided reasonable efforts and that it was Judy's failure to work with OCS that prevented her reunification with the children.[7]

The court concluded that OCS had made reasonable efforts and while "[t]hey were not perfect, . . . the law does not require perfection." The court determined that "in light of the parents' slow response to engaging in the services they were offered"

---

[7]	The court also found that OCS had made reasonable efforts, including counseling, medical treatment, and visitation, as to the children.

there was still clear and convincing evidence that OCS's efforts were reasonable under the circumstances.

The court found that both parents failed to remedy their conduct within a reasonable time. It rejected the parents' claim that holding the termination trial fewer than 15 months after the children had been removed from them amounted to a "rush to judgment"; it found that the parents had both done "virtually nothing" to address the reasons their children were in need of aid. The court concluded that Josiah's writing only one set of letters to his children demonstrated that he was not serious about reuniting with them. The court found that Judy failed to participate in either substance abuse or mental health treatment or demonstrate her sobriety with clean UAs, and she therefore had not addressed the issues that caused her to be unable to parent her children or protect them from abuse. It concluded that the parents had made no real effort to remedy the conduct that caused the children to be in need of aid.

Finally the court found that termination was in the children's best interests based upon the expert testimony of their therapists. Each child was diagnosed with a mental health disorder, and according to their therapists, required stability, predictability, and a safe home with a consistent caregiver. Because neither parent had made an effort to remedy their conduct, they were not able to begin to participate in therapy with the children. And because participating in therapy was a prerequisite to reunifying them with either parent, the court found that the parents could not provide the permanency the children needed. The court therefore found that termination of Josiah's and Judy's parental rights was in the best interests of the children.

Both parents appealed the superior court's order; we consolidated the separate appeals. Josiah argues the court erred by finding OCS made reasonable efforts. Judy argues the court erred by holding a termination trial before the children had been

in OCS custody for 15 months and clearly erred by concluding she had not remedied the conduct placing her children in need of aid.

## III.   STANDARD OF REVIEW

In a child in need of aid case, we review factual findings for clear error.[8] A finding is "clearly erroneous if review of the entire record leaves us with 'a definite and firm conviction that a mistake has been made.' "[9] "[W]e will not reweigh evidence when the record provides clear support for the superior court's ruling"[10] and "defer to a superior court's credibility determinations, particularly when they are based on oral testimony."[11] Both the determination that termination of parental rights is in a child's best interests and that a parent has failed to remedy the conditions that brought the child into custody are factual findings.[12]

" 'Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact.' For mixed questions, 'we review factual questions under the

---

[8]     *Charles S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 780, 788 (Alaska 2019).

[9]     *Id.* (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427-28 (Alaska 2012)).

[10]     *Id.* (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[11]     *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012) (citing *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 274 (Alaska 2011)).

[12]     *See Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 962 (Alaska 2013); *Sherry R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 332 P.3d 1268, 1273 (Alaska 2014).

clearly erroneous standard and legal questions using our independent judgment.' "[13] "Whether factual findings satisfy the requirements of the applicable [CINA] statute is a question of law that we review de novo."[14]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Holding The Termination Trial Before The Children Had Been In Foster Care For 15 Out Of 22 Months.

Alaska law requires OCS to file a petition to terminate parental rights when a child has been in foster care for 15 of the previous 22 months.[15] But the law does not require OCS to wait 15 months before filing a petition: "AS 47.10.088(g) explicitly allows OCS to file a petition for termination *before* the expiration of the mandatory foster care period (i.e., before 15 months have passed) if it 'determines that filing a petition is in the best interests of the child.' "[16] The petition demonstrated that OCS had made just such a determination: it stated that termination was in the children's best interests because neither parent had remedied the conduct placing the children at risk of harm. Judy had made "no progress" in addressing her substance abuse and was not "willing[] to accept accountability," and Josiah similarly refused to "take any accountability for his

---

[13] *Violet C. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 436 P.3d 1032, 1037 (Alaska 2019) (quoting *Kylie L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 407 P.3d 442, 448 (Alaska 2017)).

[14] *Annette H. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 450 P.3d 259, 265 (Alaska 2019) (alteration in original) (quoting *Theresa L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 353 P.3d 831, 837 (Alaska 2015)).

[15] AS 47.10.088(d)(1).

[16] *Emma D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 322 P.3d 842, 852 (Alaska 2014) (emphasis in original) (quoting *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1106 (Alaska 2011)).

behaviors" and had not been "open to moving forward and working on" the conditions causing his children to be in need of aid.

Judy nonetheless argues that the superior court erred by holding the termination trial because the children had been in custody for less than a year when the petition was filed. She argues that reunification, not termination, was in the children's best interests and the court's "rush" to judgment was error because it deprived her of additional time to address her substance abuse and mental health issues. She asserts that the additional time would have allowed her to remedy the conditions causing her children to be in need of aid.

The superior court rejected Judy's "rush to judgment" argument. The court found that Judy "was no closer to . . . providing the care, stability and consistency [the] children need at the close of trial than she was when the petition was filed." It cited Judy's admissions that "she still need[ed] emotional and mental health assistance," that she was "not treated for substance abuse," and that she had "never been willing to demonstrate that she [was] sober." The court concluded that Judy "ha[d] not even begun to address the issues that rendered her children in need of aid." As a result, the court found that "[u]ntreated for substance abuse [or her] mental health needs, and having demonstrated an unwillingness to begin treatment," she was not able to meet the children's needs.

The court also relied on the testimony of the children's therapists that each child had been diagnosed with a mental health disorder and had significant needs to find that neither Judy nor Josiah was able to provide for the "children's significant mental health needs." It concluded that the children "need permanency now" that neither Judy nor Josiah was able to provide and that termination — not delaying the trial to allow Judy more time to address issues — was in the children's best interests.

Judy does not argue and offers no evidence that the court clearly erred when it made these findings. And each of the court's findings is supported by the record.

OCS is not required to wait 15 months after taking custody before it files a termination petition, and the petition in this case detailed why it was in the children's best interests to file the petition sooner. The evidence presented at trial supports the court's conclusion that termination was in the children's best interests. The court did not err by holding a termination trial based on a petition filed less than 15 months after the children were removed from their home.

### B. The Superior Court Did Not Clearly Err By Finding That Judy Failed To Remedy Her Conduct Within A Reasonable Time.

Before terminating parental rights, a court must find by clear and convincing evidence that a parent "has failed, within a reasonable time, to remedy the conduct or conditions" that caused the children to be in need of aid, and that "returning [them] to the parent would place the child[ren] at substantial risk of physical or mental injury."[17] Judy asserts that the superior court erred by finding she had failed to remedy her conduct because OCS documents showed that she had made progress.

Judy stipulated that her substance abuse had left her unable to safely raise her children and caused her to fail to protect them from her husband's abuse, and that the children were therefore in need of aid. At the termination trial she again admitted that the children remained in need of aid for the same reasons, but argued that OCS had not made reasonable efforts.

Judy argues that OCS records showed that she was making progress toward addressing the issues listed in her case plan. She claims they demonstrate that she had the ability to understand her children's needs and work well with their counselors, that

---

[17]     AS 47.10.088(a)(2)(B).

she had begun to participate in services, and that she had been sober and interacted appropriately during supervised visits. But Judy misrepresents many of the records. OCS's permanency report and its termination petition state that Judy had only begun to show interest in services, not that she had begun attending them. The case plan does state that she understood the needs of her children, but does not indicate that she had the ability to work well with her children's counselors. And while she correctly argues that reports from visits with the children document that she appeared sober and behaved appropriately, her own trial testimony undercuts her argument. She acknowledged at trial that she failed to begin substance abuse treatment until the termination trial and failed to participate in UAs or mental health treatment despite her admission that she could not parent her children without completing treatment.

The court found that Judy's admitted substance abuse had left her unable to raise her children and led to her failure to protect them from Derrick's abuse. It concluded she had done "[v]irtually nothing" to address her substance abuse and mental health trauma, noting that for 15 months she had not attended treatment, had refused to participate in UAs, and only began substance abuse treatment during the termination trial. The court's findings are supported by the record, and none of Judy's arguments demonstrate clear error. The court did not clearly err by finding that Judy had not remedied the conduct or conditions that caused her children to be in need of aid.

**C.    The Superior Court Did Not Clearly Err By Finding That OCS Made Timely, Reasonable Efforts To Reunify Josiah And The Children.**

A court must find by clear and convincing evidence "that OCS made timely, reasonable efforts to provide family support services designed to prevent out-of-home placement or enable the child's safe return to the family home" before

terminating parental rights.[18]  Reasonable efforts require OCS to identify family support services to assist the parent to remedy the conduct or conditions that made the children in need of aid; OCS must "actively offer" and "refer" parents to these services and it must document its efforts.[19]  OCS "has some discretion both in determining what efforts to pursue and when to pursue them," and "[a] parent's willingness to participate in services is relevant to the scope of the efforts OCS must provide."[20]  OCS's efforts "must be reasonable but need not be perfect."[21]

Josiah argues that the superior court erred by finding OCS made reasonable efforts to reunite the children with him.  He claims that OCS delegated its obligation to provide reasonable efforts to DOC; failed to explain to him how to "work[] through the therapeutic process" or to involve him in the children's therapy; failed to remind him to send letters to his children; and failed to assign a caseworker where he lived.  Josiah also claims that OCS made no effort to identify and provide services in addition to those provided by DOC.  But he fails to identify any service he claims should have been offered to him.

The superior court found that OCS had tailored Josiah's case plan to his probation conditions.  We have long recognized that DOC's efforts count toward OCS's

---

[18]  *Duke S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 433 P.3d 1127, 1136 (Alaska 2018) (quoting *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015)).

[19]  AS 47.10.086(a).

[20]  *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 432 (Alaska 2012) (quoting *Sean B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 251 P.3d 330, 338 (Alaska 2011)).

[21]  *Id.* (quoting *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 678 (Alaska 2008)).

reasonable efforts,[22] and the superior court appropriately considered them when it found that OCS had made reasonable efforts. In addition to incorporating Josiah's probation requirements in the case plan, OCS maintained contact with him and his probation officer and encouraged him to initiate and maintain contact with his children by writing letters until he could progress to more contact with them. Josiah's argument that OCS improperly "delegated" its responsibilities has no merit.[23]

Josiah's argument that OCS failed to inform him about the children's counseling or provide him with an opportunity to participate ignores reality. Josiah's probation conditions prohibited him from any in-person contact with children; OCS therefore arranged for him to write to his children to rebuild a relationship with them. Josiah wrote to them only once in 15 months, and complains that OCS did not give him any "input," "follow-up," or "encouragement." But as the court stated, "OCS [could not] force [Josiah] to write letters," and it was his responsibility "to demonstrate true interest in reunification." His failure to demonstrate such an interest does not detract from OCS's efforts.[24]

---

[22]     *Duke S.*, 433 P.3d at 1136; *see also Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 765 (Alaska 2009) (including efforts by supervising DOC officers in efforts analysis).

[23]     *See Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 850 (Alaska 2009) (affirming active efforts finding when father received classes and therapy while incarcerated, OCS communicated with father, and "OCS arranged for written exchanges and telephone visits" with children); *A.M. v. State*, 945 P.2d 296, 306 (Alaska 1997) (affirming active efforts finding when father received sex offender treatment while incarcerated and OCS predecessor agency maintained contact with father, generally encouraged treatment efforts, and assisted with visitation).

[24]     As Josiah argues, OCS did fail to speak to two children's therapists about involving Josiah in therapy. But OCS's overall efforts "must be assessed 'in light of the
(continued...)

Josiah's claim that the delay in assigning a caseworker near his home in the Matanuska-Susitna Valley shows a lapse in reasonable efforts is similarly without merit. As the court concluded, Josiah's failure to respond to the local caseworker's messages after the caseworker was assigned rendered the delay insignificant.[25]

The court did not clearly err by concluding that OCS made reasonable efforts to reunite Josiah with his children.

## V.    CONCLUSION

We AFFIRM the termination of Josiah's and Judy's parental rights.

---

[24]    (...continued)
circumstances' of the case." *Annette H. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 450 P.3d 259, 268 (Alaska 2019) (quoting *Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 259 (Alaska 2013)). Here the court found Josiah's "unwillingness to take the first step toward visitation or involvement in therapy" and his "children's lack of readiness to engage in family therapy at [that] time or at any reasonable time in the future" meant that OCS's failure did not render its efforts less than reasonable.

[25]    *See id.*