NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RONAN F., | ) | |
| | ) | Supreme Court No. S-17731 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 4FA-17-00005/ |
| v. | ) | 00006 CN |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) | AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | No. 1815 – February 10, 2021 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Thomas I. Temple, Judge.

Appearances: Jason A. Weiner, Gazewood & Weiner, P.C., Fairbanks, for Appellant.  Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee. Nikole V. Schick, Assistant Public Advocate, Fairbanks, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before:  Bolger, Chief Justice, Winfree and Maassen, Justices. [Carney and Borghesan, Justices, not participating.]

## I.    INTRODUCTION

The superior court found that two children were in need of aid because of abandonment, risk of mental injury, and their father's mental illness and ordered that the

---

\*    Entered under Alaska Appellate Rule 214.

father's parental rights be terminated. On appeal the father challenges the court's finding that the Office of Children's Services (OCS) satisfied the statutory requirement that it make reasonable efforts to reunify the family. We conclude that the court did not clearly err in its findings of fact and that those findings satisfied the statutory requirements for termination. We therefore affirm the termination order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Ronan F. and Saffron C. were married and had three children, Erik, Asher, and Otto, born in 2002, 2005, and 2006, respectively.[1] Ronan left Saffron and the children in 2008 and divorced Saffron soon afterward. For several years Ronan had minimal involvement with the children, visiting them only occasionally. In 2010 he began a relationship with his current wife, with whom he has had two more children. This appeal concerns the termination of Ronan's parental rights to Asher and Otto, two of the children of his marriage to Saffron.[2]

OCS became involved with Erik, Asher, and Otto in 2012 after Saffron's father bit one of the children. OCS tried to reach Ronan but had "very hit or miss" contact with him until February 2013. OCS and Ronan blame each other for this delay; Ronan testified that he had trouble contacting OCS and that they would not reply to his messages, while an OCS caseworker testified that she could not get any contact information for him.

---

[1]     We use pseudonyms to protect the family's privacy.

[2]     Erik is no longer involved in this case; he was almost 18 at the time of trial and did not want his parents' parental rights terminated.

Once they were in touch, OCS offered Ronan various services, including visitation, but according to OCS he did not follow through. The 2012 OCS case ended in August 2014 when Erik, Asher, and Otto were returned to Saffron's care.

In September 2014 OCS again became involved with the children, following a domestic violence incident between Saffron and her boyfriend. According to OCS, it was again unable to reach Ronan, and he was therefore not included in the subsequent safety plans; OCS again determined that he was "not at all" involved with the children. OCS managed to contact him in March 2015, with the goal of encouraging him to engage with a case plan and work toward visitation or placement.

In November 2015 OCS removed the children from Saffron for the second time. The caseworker testified that OCS searched for relatives following removal but was able to reach Ronan only once, when he "hung up on" the OCS caller. The caseworker testified that she persisted in trying to reach him: she sent him a letter, repeatedly called the phone numbers she had for him, and periodically asked Saffron how to contact him. But the caseworker did not reach Ronan again until she "bumped into him" at OCS while he was visiting his younger children, the children of his second marriage. She testified that Ronan informed her that he wanted visitation with his older children but did not want to keep them, and again he did not follow through on visitation. OCS closed the 2014 case in December 2016 when the children were again returned to Saffron.

In January 2017 OCS became involved with Erik, Asher, and Otto for a third time after Otto went to school "at 45, 50 below with no coat on." The children were again removed; this third OCS case is the one leading ultimately to termination. According to OCS, it was unable to contact Ronan after this removal until March 2017, though he was in continuous communication with OCS about his younger children's

case. Erik, Asher, and Otto's caseworker testified that she tried using the same phone number without success.

Ronan began engaging with his older children in April 2017, and visitation transitioned that summer to a three-month trial home visit. But the trial home visit failed; Ronan and OCS again dispute who was to blame. Ronan testified that Saffron bribed the children to sabotage the placement and that he asked OCS to help, but that OCS did not offer any support, ignored his calls, and lied to him about its plans. The caseworker admitted that she knew Ronan was struggling and that Ronan felt he lacked adequate support. But she testified that although OCS offered services including a parenting program and a residential treatment program, Ronan failed to make appointments and missed intake assessments, and "things seemed to get worse." Ronan testified that he did not have time for these services because he was busy with other classes and taking care of his younger children. According to the caseworker, Ronan repeatedly said that his wife and younger children "had to [be] put first," that he could not handle the older children, and that they had to leave.

OCS removed Erik, Asher, and Otto from the trial home visit after "[a] couple months" and placed them in separate foster homes. OCS offered Ronan visitation, but he missed a number of visits in a row and was eventually removed from the visitation calendar.

The next summer, OCS was again considering Ronan's home as a permanent placement for his older children, and it asked him to participate in family therapy with the children's counselor. But therapy did not go well, and Ronan stopped attending after a few sessions.

The older boys' caseworker testified that OCS tried to facilitate community and in-home visits by giving the children bus passes and cab rides. But Ronan "refused" to do any community visitation, even though at the same time he was managing to "find[]

rides somehow" to see his younger children two or three times a week. OCS attempted several times to combine the younger and older children's cases to make it easier to coordinate visitation, but Ronan refused to cooperate. The caseworker testified that Ronan also refused to get drug tests, engage in substance abuse counseling, or work with OCS on case planning.

At the time of trial in October and November 2019, Ronan was still actively working on the case plan for his younger children. But Asher, Erik, and Otto's caseworker testified that she had been unable to contact him since April; she had tried multiple calls to his last known number and the number on file for the younger children's case, which Ronan kept "pretty up to date." Ronan admitted that OCS had not scheduled a visit with Erik, Asher, and Otto in over a year and that visitation was "little to none" after the trial home visit in the summer of 2017.

## B. Proceedings

OCS filed its termination of parental rights petition in February 2018. When trial began late the next year, Saffron voluntarily relinquished her parental rights to Asher and Otto, and the superior court terminated Ronan's parental rights to the two children following trial.[3] The court found by clear and convincing evidence that Asher and Otto were children in need of aid under AS 47.10.011(1) (abandonment), AS 47.10.011(8) (mental injury), and AS 47.10.011(11) (parental mental health).

The court made the other findings necessary for termination as well, including a finding by clear and convincing evidence that OCS made reasonable efforts

---

[3]     As noted above, OCS withdrew its request that parental rights to Erik be terminated as well, as he was about to turn 18 and did not want his parents' rights terminated.

to reunify Ronan and his children.[4]  The court found that OCS attempted to engage Ronan "in a relatively simple plan including therapy and visitation" but that he "never really engaged."  Ronan appeals, challenging only the reasonable efforts finding.

## III.  STANDARDS OF REVIEW

" 'Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact.'  For mixed questions, 'we review factual questions under the clearly erroneous standard and legal questions using our independent judgment.' "[5]  "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the party prevailing below leaves us 'with a definite and firm conviction that a mistake has been made.' "[6]

## IV.  DISCUSSION

**The Superior Court Did Not Clearly Err In Finding That OCS Made Timely, Reasonable Efforts To Reunify Ronan With His Children.**

The CINA statutes require OCS to prove by clear and convincing evidence that it made "timely, reasonable efforts to provide family support services to the [children] and to the parents . . . that [were] designed to prevent out-of-home placement

---

[4]     AS 47.10.086(a) ("[T]he department shall make timely, reasonable efforts to provide family support services to the child and to the parents . . . of the child that are designed to prevent out-of-home placement of the child or to enable the safe return of the child to the family home, when appropriate, if the child is in an out-of-home placement.").

[5]     *Violet C. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 436 P.3d 1032, 1037 (Alaska 2019) (quoting *Kylie L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 407 P.3d 442, 448 (Alaska 2017)).

[6]     *Id.* (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

of the [children] or to enable the safe return of the [children] to the family home."[7] We have held that "[t]he efforts that OCS makes must be reasonable but need not be perfect."[8] "[OCS] has some discretion in determining what efforts to pursue and whether the timing is reasonable."[9]

After hearing the evidence set out above, the superior court concluded that OCS had met its burden. The court found that OCS had acted reasonably by "attempt[ing] to engage [Ronan] in a relatively simple plan including therapy and visitation" and listed some of OCS's efforts: the trial home visit, visitation support, "family and individual therapy, a parental risk assessment, and substance abuse assessment." But the court found that OCS's efforts were consistently undercut by Ronan's failure to engage. The court found that Ronan "refused to take UAs," to participate in case planning, or to "address[] his substance abuse issues or his domestic violence issues, despite acknowledging his need to do so." The court noted that he prioritized his relationship with his wife, whose "volatile and dangerous behavior made her a danger to [the] older children" and who "continually thwarted" OCS's attempts to arrange visitation. The court found that Ronan "refused the assistance of OCS to coordinate visits with the older children," that he "refused to work with his case worker," and that "[d]espite years of contact with and offers of help from OCS" he failed to provide for his older children during periods when they were removed from Saffron's care. Finally, the court noted that the trial home visit "was terminated at his own

---

[7]      AS 47.10.088(a)(3); AS 47.10.086(a).

[8]      *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 678 (Alaska 2008).

[9]      *Sean B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 251 P.3d 330, 338 (Alaska 2011).

request."  In sum, laying most of the blame on Ronan, the court found that OCS's efforts "were clearly and convincingly reasonable."

Challenging this conclusion, Ronan makes essentially three arguments. First, he argues that OCS unreasonably failed to contact him after the initial removal in 2012 and unreasonably lost contact at intervals throughout the case.  He views this failure as "particularly remarkable" when contrasted to OCS's relatively few communication issues in his younger children's case.  He argues that the lack of communication doomed him to failure, as "[i]t is impossible to fulfill [case plan] requirements when one is unaware of them."

Second, Ronan argues that OCS failed to support him during the trial home visit.  He argues that OCS should have made sure he understood the importance of family counseling during this time, implying that he would have taken it more seriously had he known that it "might be used as a means of reintegrating [him] and the children into one another's lives and thereby support reunification."

Finally, Ronan argues that because of his demonstrated willingness to make efforts in his younger children's case, the record proved that he could have done the same in this case, given regular contact and the proper encouragement.  He identifies several treatments and classes he attended "of his own volition" and notes that one of his younger children was placed with him as a result.

None of these arguments demonstrates clear error in the court's reasonable efforts finding.  As for the first two arguments — the initial communication failure in 2012 and the alleged lack of pointed encouragement during the trial home visit — they involve, at most, discrete and limited failures in OCS's very long-running involvement

with Ronan's family. "The reasonableness of the [S]tate's efforts 'must be viewed in light of the entire history of services that the [S]tate had already provided.' "[10]

As for Ronan's arguments that his own parenting efforts were doomed by OCS's failure to stay in touch with him — and that more consistent contact could have had a positive effect, as shown by his relative success in his other OCS case — he is essentially asking us to reweigh the evidence; he asks that we accept his narrative that OCS did not make reasonable efforts to contact or support him rather than OCS's narrative that he rejected the help that was persistently offered. But the evidence conflicted on these issues. OCS provided testimony from a number of witnesses about its communication attempts and Ronan's lack of engagement. These included three caseworkers involved in the older children's case, the caseworker for the younger children's case, and the family therapist. As for Ronan's contrary testimony, the court found that he lacked credibility because of his poor memory, especially when it came to "information that tended to show him in a less than favorable light." And from the trial court's perspective, Ronan's willingness to engage with his younger children's OCS case showed not that OCS failed to work as hard in this case, but rather that Ronan himself did "not care enough" about his older children to make the same effort.

"[C]onflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[11] And "[w]e give deference to the superior court's credibility

---

[10] *Audrey H.*, 188 P.3d at 678 (quoting *Erica A. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 66 P.3d 1, 7 (Alaska 2003)).

[11] *Charles S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 780, 788 (Alaska 2019) (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

assessments, especially when such assessments are based on oral testimony."[12]  The record here provides clear support for the superior court's findings, and they are not clearly erroneous.

## V.    CONCLUSION

We AFFIRM the order terminating Ronan's parental rights.

---

[12]    *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 949 (Alaska 2013).