NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JONAH B., | ) | |
| | ) | Supreme Court No. S-18646 |
| Appellant, | ) | |
| | ) | Superior Court Nos. |
| v. | ) | 3AN-19-00353/00354/00355 CN |
| | ) | (Consolidated) |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF FAMILY & COMMUNITY | ) | MEMORANDUM OPINION |
| SERVICES, OFFICE OF | ) | AND JUDGMENT* |
| CHILDREN'S SERVICES, | ) | |
| | ) | No. 2001 – December 6, 2023 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jack R. McKenna, Judge.

Appearances: Monique Eniero, Anchorage, for Appellant. David A. Wilkinson, Assistant Attorney General, Anchorage, Jessica M. Alloway Assistant Attorney General, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, and Pate, Justices. [Henderson, Justice, not participating.] Borghesan, Justice, dissenting.

## I.     INTRODUCTION

---

\*       Entered under Alaska Appellate Rule 214.

A father appeals the termination of his parental rights. He argues that the Office of Children's Services (OCS) failed to make reasonable efforts to reunify his family and did not afford him a reasonable period of time to remedy the conduct that placed his children at substantial risk of injury. Although it is a close decision, we agree that OCS's efforts were not reasonable under the circumstances and that the father was not provided a reasonable period of time to remedy his conduct. We therefore reverse the superior court's order terminating the father's parental rights.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Removal of the children

Jonah B.[1] is the father of Caleb (born 2012), Adam (born 2014), and Serena (born 2017). In September 2015 OCS filed a non-emergency petition for custody of Caleb and Adam. At that time, Jonah was incarcerated and OCS was concerned that the children's mother, Judith L., was using drugs while caring for the boys. Caleb and Adam were ultimately returned to Judith and OCS closed the case in 2017.

Jonah was continuously incarcerated in Idaho from October 2018 to June 2022 for felony domestic assault, failure to register as a sex offender, and probation violations.

OCS took emergency custody of all three children in June 2019 and subsequently filed an emergency petition for adjudication of the children as in need of aid. Adam reported domestic violence between his mother and her boyfriend. A nurse practitioner documented Adam and Caleb's "rotting teeth," a skin condition on Serena's scalp, and all of the children's unkempt condition and low body weights. Judith tested positive for methamphetamine and admitted to recent use.

---

[1] We use pseudonyms to protect the parties' privacy.

### 2. Efforts after removal

OCS focused its reunification efforts on Judith. Beginning in September 2019 she attended outpatient treatment, engaged in case planning and OCS-provided services, and had regular family contact. But in January 2021 Judith relapsed, and it became more difficult to maintain contact with her, although OCS continued to facilitate family contact and case-planning meetings.

In contrast to the efforts made toward Judith, OCS's efforts toward Jonah were virtually nonexistent for the first three years of the case. An OCS caseworker attempted to contact Jonah at the Idaho correctional facility at the time of the emergency petition in 2019. She testified that she believed she spoke with Jonah on the phone, but this contact does not appear to have been documented. The caseworker mailed a copy of the petition to the prison. OCS also developed case plans for Jonah while he was incarcerated. The case plans indicate that OCS intended to make referrals, meet with Jonah, and update the case plan with his input. The plans tasked Jonah with completing an integrated assessment and attending parenting classes. But Jonah never signed the plans, and there is no evidence that he even saw them. There is no evidence that OCS ever contacted Jonah about the plans.

OCS had only one documented contact with Jonah while he was incarcerated: in June 2020 Jonah asked OCS to schedule visitation with the children. Caleb and Adam's foster parents joined the call and updated Jonah on the children; all parties agreed to weekly telephonic visitation on Saturdays, and Jonah stated that he would call the foster parents for visitation. But Jonah had only two or three phone calls with Caleb and Adam while he was incarcerated. The record is silent as to why phone calls did not occur weekly. OCS did not attempt to contact Jonah again until March 2021 when a caseworker left a voicemail for the prison warden. OCS again tried to contact Jonah in October 2021 by calling the Idaho facility. Both attempts at contact were unsuccessful.

The children were adjudicated as children in need of aid in November 2020. In March 2022, OCS filed a petition to terminate parental rights. A termination trial was scheduled to begin in June, but it was continued to allow Jonah time to obtain an attorney and continued several more times to accommodate attorney conflicts and changes in representation. Trial ultimately did not commence until December 2022.

Meanwhile, Jonah was released from prison in June 2022, but remained in Idaho because he had not satisfied his parole requirements. In August OCS provided Jonah's contact information to his attorney. OCS also developed a case plan for Jonah in early August. Jonah did not sign this case plan.

In September 2022 a new caseworker was assigned and developed a case plan for Jonah, which largely duplicated the August case plan. The plan tasked Jonah with completing domestic violence and parenting classes, working with the caseworker to develop a family contact plan, learning about Caleb's special needs, and engaging in monthly meetings with the caseworker.

The caseworker worked with the parole officer in Idaho to attempt to match the case plan activities to Jonah's parole requirements. Between September and December 2022, Jonah was in frequent contact with the caseworker, and he participated in weekly phone visitation with the children in the month and a half before trial. At some point in the months before the trial, the caseworker also attempted to arrange in-person visitation between Jonah and the children in Anchorage. Although the caseworker made logistical arrangements, Jonah still had not complied with a parole requirement to attend domestic violence classes and was thus unable to leave Idaho.

B.    Termination Proceedings

The termination trial for both parents was held over three days in December 2022 and January 2023. Jonah attended by video conference. On the first day of trial Jonah's attorney made an oral motion to continue the trial, but the court denied the motion.

An OCS caseworker testified Jonah had partially complied with the activities listed in his case plan — remaining in regular contact with his caseworker, learning about Caleb's special needs, and providing the caseworker with his parole officer's contact information — but he had not attended parenting or domestic violence classes as the case plan required.

The caseworker testified that Jonah had recently begun participating in weekly phone contact with the children. But the caseworker also stated that the children did not "really know [Jonah]" and that Serena regressed when interacting with Jonah, "biting her nails, sucking her thumb, and . . . shying away." Contradicting her earlier testimony, the caseworker stated that neither parent had completed any activities or goals since the case was opened in 2019.

Jonah's parole officer testified that Jonah had failed to complete any domestic violence classes required as part of his parole conditions. Jonah had, however, completed some other parole requirements, such as registering as a sex offender and obtaining a sex offender evaluation. The parole officer explained that maintaining employment and housing had "been somewhat of a struggle" for Jonah, and that Jonah would not be eligible to travel from Idaho to Alaska until either (1) he completed supervision in October 2023 or (2) he fulfilled the parole requirements before then. Given Jonah's lack of progress, the parole officer expected Jonah would have to wait until October 2023 to travel.

The superior court found clear and convincing evidence that the children were in need of aid. The court further found clear and convincing evidence that OCS made reasonable efforts to provide services to prevent the breakup of the family, and that both parents failed to remedy the conditions causing the children to be at substantial risk of harm within a reasonable period of time.

The court acknowledged that "initially there were less frequent attempts to get in touch with [Jonah]" while he was incarcerated, but reasoned, "[I]t can be

difficult to get in touch with someone who is incarcerated and they did make efforts to reach out to him, and those were documented. And so I find there were reasonable efforts to get in touch with him." The court acknowledged that it was "hard to know what programs were available in Idaho where he was incarcerated," but found that OCS was "trying to work with him" while he was incarcerated.

The court applauded Jonah's recent efforts to stay connected with the caseworker, acknowledging that Jonah's efforts made the case "a little bit more of a tough situation." But Jonah's recent efforts, the court explained, were simply not enough given his lack of engagement while incarcerated: "OCS did reach out to him, [but] he did not meaningfully become involved until late here in the game[.]" The court pointed to Jonah's lack of progress on his case plan since his release and the anticipated length of his supervised parole in Idaho, explaining that "if [Jonah] had taken those classes as required by his [parole officer] and made that visit that was scheduled, we'd probably be in a . . . different situation for him right now."

The court found that it was in the best interests of the children to terminate parental rights.[2] Jonah appeals.

## III. STANDARD OF REVIEW

Whether OCS made reasonable efforts to reunify a family is a mixed question of law and fact.[3] For mixed questions, we review factual questions under the clearly erroneous standard and legal questions using our independent judgment.[4] "Whether factual findings satisfy the requirements of the applicable [CINA] statute is

---

[2]    Judith does not challenge termination.

[3]    *Duke S. v. State, Dep't. of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1127, 1132 (Alaska 2018).

[4]    *See Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1162 (Alaska 2016) (quoting *Sherry R. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 332 P.3d 1268, 1274 (Alaska 2014)).

a question of law that we review de novo."[5] We therefore review de novo the superior court's conclusion that OCS has satisfied the requirements of the child in need of aid statute.[6]

## IV. DISCUSSION

Before a trial court terminates parental rights, it must find by clear and convincing evidence "that OCS made timely, reasonable efforts to provide family support services designed to prevent out-of-home placement or enable the child's safe return to the family home."[7] "By statute, OCS's duties include the duty to: (1) identify family support services that will assist the parent in remedying [his] conduct; (2) actively offer those services to the parent and refer the parent to them; and (3) document the department's actions."[8] "The requirement that OCS offer reunification services 'is fulfilled by setting out the types of services that a parent should avail . . . [himself] of in a manner that allows the parent to utilize the services.' "[9]

Additionally, a trial court may not terminate parental rights unless it finds by clear and convincing evidence that the parent has failed to remedy the conduct or conditions in the home that place the child at substantial risk of harm, or has failed to do so within a reasonable period of time.[10]

---

[5]    *Annette H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 450 P.3d 259, 265 (Alaska 2019) (alteration in original) (quoting *Theresa L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 353 P.3d 831, 837 (Alaska 2015)).

[6]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010).

[7]    *Duke S.*, 433 P.3d at 1136 (quoting *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015)).

[8]    *Sylvia L.*, 343 P.3d at 432 (citing AS 47.10.086(a)).

[9]    *Id.* (first alteration in original) (quoting *Audrey H. v. State, Off. of Child.'s Servs.*, 188 P.3d 668, 679 (Alaska 2008)).

[10]    AS 47.10.088(a)(2)(A)-(B).

Jonah argues the superior court erred in finding that (1) OCS made reasonable efforts to reunify the family and (2) he failed to remedy the conduct that placed the children at substantial risk of harm within a reasonable period of time. These two arguments substantially overlap, both centering on the fact that Jonah appears to have had less than three months prior to trial — from the date of his first case-planning meeting with OCS on September 19, 2022 until his trial commenced on December 2 — to address his case plan requirements.

The extremely short window of time that Jonah had notice that his plan required parenting and domestic violence classes was, in part, the result of Jonah's lengthy period of incarceration and Jonah's failure to fully engage with OCS immediately after OCS made contact in September 2022. But the most significant contributing factor to this short window of time was OCS's lack of efforts toward Jonah during the three years he was incarcerated.

The court's finding that OCS made reasonable efforts to contact Jonah during his period of incarceration was error. The relevant period of Jonah's incarceration is from the time his children were taken into custody in June 2019 until his release from custody in June 2022. During this three-year period OCS documented only a handful of attempts to contact Jonah, primarily consisting of phone messages left with the jail or warden and including one contact by mail. There was no description of any return phone calls. There was no evidence of efforts by OCS to establish any other lines of communication with Jonah, such as attempting to contact him via certified mail or through a supervising correctional officer.

The only documented successful attempt involved OCS merging a phone call between Jonah and the children's foster parents to schedule visitation. Notably there is no evidence that OCS attempted to provide Jonah with a copy of his case plan or discuss his case plan with him until after Jonah had been released from custody.

Although "the scope of OCS's duty to make reasonable efforts is affected by a parent's incarceration,"[11] the challenge of working with an incarcerated parent does not relieve OCS of its duty to make reasonable efforts toward reunification.[12] The finding that OCS made reasonable efforts to reunify the family was error, given both the minimal efforts made to contact Jonah over the three-year period of his incarceration and OCS's failure to provide Jonah with a case plan until less than three months before commencement of trial.

The superior court faulted Jonah for not becoming meaningfully involved "until late here in the game." It is true that by the time of trial Jonah had not made any real progress toward completing some components of his case plan, failing to enroll in parenting and domestic violence classes. Indeed, Jonah's failure to do so, along with the efforts OCS made toward Jonah after his release and toward Judith over the life of the case,[13] is what makes this case a close decision.

But the responsibility to initiate a case plan lies with OCS, not with the parent.[14] Although OCS provided Jonah with a copy of the petition for emergency

---

[11] *Barbara P.*, 234 P.3d at 1262.

[12] *See Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003) (noting that test of whether OCS made reasonable efforts to reunify family is not limited to period after parent has been released from incarceration).

[13] *See Dashiell R. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 222 P.3d 841, 849-50 (Alaska 2009) (concluding OCS's efforts satisfied higher "active efforts" standard, despite being "heavily oriented" toward mother while father was incarcerated, and noting superior court may "take into accounts the limits imposed by a parent's incarceration").

[14] *Cf. Clark J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 483 P.3d 896, 903 (Alaska 2021) (concluding that OCS failed to satisfy "active efforts" standard when OCS failed to provide father with copy of case plan until nearly four years after his children were taken into OCS custody). OCS is, of course, not obligated

custody at some point in 2019, OCS waited for more than three years to provide Jonah with a copy of his case plan. The evidence suggests that Jonah first learned of his case plan and had his first discussion with OCS about the requirements of the case plan in September 2022. It is not surprising, after three years of inaction by OCS, that Jonah did not fully engage with OCS immediately after it made contact.

We have noted that a failure by OCS to provide a case plan directed toward reunifying a family may, in and of itself, be fatal to a finding of reasonable efforts.[15] Although OCS did not completely fail to provide Jonah with a case plan, OCS's failure to timely provide a case plan does appear to have prejudiced Jonah's ability to have a meaningful opportunity to participate in that plan.

In *Frank E. v. State, Department of Health & Social Services, Division of Family & Youth Services*,[16] we addressed a situation where OCS failed to provide an incarcerated parent with a meaningful case plan in a timely manner.[17] In *Frank E.*, we held that, although OCS's "failure to identify and offer programs to [the parent] before the planned termination would generally violate the state's duty" to make reasonable efforts, the failure was harmless because the superior court continued the termination trial for six months to afford the incarcerated parent an opportunity to complete his case

---

to initiate a case plan when a parent demonstrates "a lack of willingness to participate." *See A.A. v. State, Dep't of Fam. & Youth Servs.*, 982 P.2d 256, 262 (Alaska 1999). But nothing in the record here indicates that Jonah was unwilling to cooperate with OCS; indeed, once released, he remained in regular contact with his caseworker.

[15]    *Duke S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1127, 1136 (Alaska 2018).

[16]    77 P.3d 715.

[17]    *See id.* at 720 (noting that case plan focused on treatment and classes only available after parent was released from incarceration was inadequate when termination trial was scheduled before his release).

plan.[18]  While six months may be adequate time to allow a parent a reasonable opportunity to attempt to meet the requirements of a case plan under some circumstances, we cannot say that less than three months was an adequate or reasonable amount of time under the circumstances of Jonah's case.

The superior court did not consider whether OCS's failure to timely provide a case plan created unrealistic expectations for Jonah.  For example, the court stated that if Jonah had taken the domestic violence classes required by his parole conditions and made the in-person visit that OCS had scheduled with his children, it would probably be a "different situation for him right now."  As the in-person visitation appears to have been planned for mid-October,[19] providing the case plan to Jonah on September 19 would have given him one month's notice of what he needed to accomplish to obtain permission to travel for the visitation.  Again, given the three-year period of inaction by OCS, it is understandable that a recently formerly incarcerated parent under such circumstances might feel distrustful of OCS and overwhelmed, and therefore fail to fully and immediately engage with OCS.

Further, while efforts by a state correctional authority may count toward the reasonable efforts expected of OCS,[20] there is no evidence of the services available to Jonah while he was incarcerated, and there is no evidence that Idaho correctional authorities offered any services to Jonah until after he was released from custody.  Even if such evidence existed, the fact that Jonah was not made aware of his case plan requirements while he was incarcerated would limit the extent to which services provided by correctional authorities could satisfy the reasonable efforts requirement.

---

[18]     *Id.*

[19]     Although there was no testimony on this point, a "Summary of Efforts" admitted in evidence indicates the visitation was scheduled to begin October 19.

[20]     *Dashiell R. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 222 P.3d 841, 849-50 (Alaska 2009).

Even after release, Jonah had no reason to know that satisfying his parole conditions could partially satisfy his case plan requirements until less than three months before trial.

Jonah's lack of engagement after he received notice of his case plan is concerning. But considering the minimal efforts made by OCS to engage Jonah during his three-year incarceration and OCS's failure to provide Jonah with a case plan or to discuss it with him until less than three months prior to trial, we conclude that it was error to find that OCS made reasonable efforts toward reunification.[21]

## V. CONCLUSION

We REVERSE the order for termination of Jonah's parental rights.

---

[21] For the same reasons we conclude that it was error to find under AS 47.10.088(a)(2)(B) that Jonah failed to remedy the conduct or conditions that placed the children at risk of harm within a reasonable period of time.

BORGHESAN, Justice, dissenting.

I respectfully disagree with the court's decision. I agree it is a close case. And there is no question that OCS failed to make reasonable efforts toward Jonah while he was in prison. But I believe that OCS's efforts after Jonah's release from prison were reasonable in light of the children's need for permanency and Jonah's failure to take the steps laid out in his case plan.

When OCS took custody of the children in June 2019, Jonah was in prison in Idaho for felony domestic violence assault and failure to register as a sex offender. The children were then six, five, and two years old. OCS worked with the children's mother toward reunification, but these efforts were unsuccessful. I fully agree with the court's conclusion that OCS's scant efforts toward Jonah while he was in prison, and in the first few months after his release in June 2022, were not reasonable.

But OCS began working in earnest in September 2022, when it made him a case plan, went over the plan with him, tried to set up travel so he could visit his children in Alaska, and communicated with him regularly about his case plan.

The court concludes that these efforts did not continue long enough. According to the court, it is understandable that a parent in Jonah's position would feel overwhelmed and distrustful of OCS and therefore fail to fully and immediately engage with OCS. I agree that those feelings are understandable, but I fear the court is giving too much weight to Jonah's feelings, and not enough weight to the children's needs.

Parents cannot let feelings of distrust, resentment, or helplessness get in the way of their duty to take care of their children. By the time OCS reached Jonah in September 2022, his children had been waiting for permanency for over three years. That whole time, Jonah had been in prison for a violent crime. When OCS approached him with a plan to regain custody, that was the time for him to do what was necessary to get his children back.

Unfortunately he didn't. Although Jonah had done some of the things that OCS and his probation officer requested, Jonah's caseworker testified that he had not taken domestic violence classes, anger management classes, or parenting classes. His parole officer testified in January 2023 that Jonah "ha[d]n't completed the domestic violence class, which we have been talking about for multiple months at this point."[1] The officer explained that because Jonah had "not been completing any of the requirements of the parole contract, . . . . there was no reason" to reward him by lifting the travel restriction so he could visit the children in Alaska. This testimony might be interpreted to mean that Jonah was working diligently on these requirements but simply hadn't completed them due to lack of sufficient time, but that is not what the superior court found. The court found that "if [Jonah] had taken those classes as required by his PO and made that visit that was scheduled, we'd probably be in a . . . different situation . . . . But that's not what happened." It found that Jonah "didn't take advantage of" the efforts OCS made. When we review the trial court's factual findings, we are required to view the evidence in the light most favorable to the prevailing party.[2] Read in that light, the evidence shows that Jonah could have been more diligent in doing the things needed to regain custody of his children.[3]

---

[1]     The court notes that Jonah was provided a case plan less than three months before his termination trial began. But because the three trial days were spaced out over a month, the social worker and probation officer testified about Jonah's progress more than three months after he received his case plan. Accordingly, Jonah had more than three months to make meaningful progress on the requirements of his case plan, but failed to do so.

[2]     *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008).

[3]     The court notes that there is no evidence indicating Jonah was unwilling to cooperate with OCS and notes that he remained in regular contact with his caseworker. But there is a difference between staying in good contact with OCS and

When the parent of a child in OCS custody is in prison for a long time, OCS may be excused from making reunification efforts at all.[4] The legislature evidently decided that a young child's need for permanency within a reasonable time outweighs an incarcerated parent's right to reunification efforts. Although that statute was not invoked in Jonah's case, we should heed the underlying policy. When a young child in OCS custody has been waiting a long time for a parent to be released from prison, we should not require a lengthy period of reunification efforts if the parent does not engage and is not likely to be reunited with the child soon. At the rate Jonah was going, the parole officer believed he would not be free of supervision until the fall of 2023. That would be more than *four years* after the children were taken into OCS custody (for the second time). And even then there would be no guarantee of successful reunification.

A parent's own level of engagement and the needs of the children are both relevant to determine what efforts count as "reasonable."[5] A three-month period of efforts would normally not be reasonable. But with the unique facts of this case, I

---

taking the necessary steps to address the behaviors that place the children at risk of harm, which is essential to regaining custody.

[4] AS 47.10.086(c)(10) (providing that superior court may excuse OCS from making reasonable efforts if "the parent or guardian is incarcerated and is unavailable to care for the child during a significant period of the child's minority, considering the child's age and need for care by an adult").

[5] *Jimmy E. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 529 P.3d 504, 522 (Alaska 2023) ("In making reasonable efforts, the primary consideration is the child's best interests." (citing AS 47.10.086(f))); *Audrey H. v. State, Off. of Child.'s Servs.*, 188 P.3d 668, 678 (Alaska 2008) ("When making determinations under AS 47.10.086, 'the primary consideration is the child's best interests.' " (quoting AS 47.10.086(f)); *Violet C. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 1032, 1038 (Alaska 2019) ("A parent's demonstrated unwillingness to participate in treatment may be considered in determining the reasonableness of state efforts.").

believe three months of sustained efforts was reasonable. Jonah was unavailable to his children for three years due to his own violent conduct. During this time OCS made substantial efforts to reunify the children with their mother, but these efforts were unsuccessful. Although OCS barely communicated with Jonah, he was well aware his children were in foster care. When Jonah was released from prison, he needed to actively engage so his children would not have to wait in limbo even longer. He did not. And there is nothing in the record to suggest that his slow start was due to addiction or mental illness, which may affect parents' ability to fully understand the gravity of the situation or what needs to be done about it, and for which a lengthy period of treatment is often required to make progress. I do not believe that a parent's feelings of distrust or frustration alone, even if understandable, require OCS to undertake a lengthy period of reunification efforts when the children have already been waiting so long.[6]

Relying on the *Frank E.*[7] decision, the court appears to set a minimum period of six months for OCS efforts. But in *Frank E.* we did not purport to determine the minimum period of efforts that counts as reasonable.[8] And the children in that case had waited far less time than the children here. In *Frank E.* the children had been in OCS custody for about eight months when the superior court postponed the termination

---

[6]    In cases governed by the Indian Child Welfare Act (ICWA), OCS has a greater obligation to attempt to overcome feelings of distrust or resistance when working with the parents of Indian children. *See Mona J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 511 P.3d 553, 562-63 & n.34 (Alaska 2022) (recounting purposes behind ICWA's "active efforts" duty and noting that "generational trauma has instilled a deep sense of distrust of government workers in Native communities" (quoting *In re Dependency of G.J.A.*, 489 P.3d 631, 649 (Wash. 2021))). This case, however, is not governed by ICWA.

[7]    *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 77 P.3d 715 (Alaska 2003).

[8]    *See id.* at 718-22.

trial for six months to allow OCS to make efforts.[9] In this case the children had been waiting for permanency almost five times as long.

OCS gave Jonah a reasonable opportunity to make progress toward reunification. If he had actively engaged, showing a substantial possibility that reunification was likely to happen soon, then the duty of reasonable efforts would have required OCS to give that progress a chance to continue. But Jonah did not fully engage, and it was unlikely the family would be reunified in the near future. Despite OCS's very troubling failures in this case, I think its late efforts gave Jonah a reasonable opportunity for reunification. That was enough given his lengthy incarceration, his lack of engagement, and the children's need for permanency.

The same reasons lead me to disagree with the court's conclusion that the superior court erred in finding that Jonah failed to remedy his conduct within a reasonable time. "[T]he statute defines 'reasonable time' not . . . by reference to parents' needs, but as 'a period of time that serves the best interests of the child, taking in account the affected child's age, emotional and developmental needs, and ability to form and maintain lasting attachments.' "[10] Despite being convicted of felony domestic violence assault, Jonah did not take the necessary anger management or domestic violence classes. The children had spent three years in OCS custody, and the evidence showed that Jonah had still not taken classes to address the conduct that landed him in prison. He had not remedied his conduct at all, let alone within a reasonable time.

For these reasons I would affirm the superior court's decision terminating parental rights.

---

[9]     *Id.* at 716.

[10]     *Christina J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 254 P.3d 1095, 1107 (Alaska 2011) (quoting AS 47.10.990(30)).