NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAN B., | ) | |
| | ) | Supreme Court Nos. S-18627/18631 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court Nos. 1KE-15-00012 CN/ |
| | ) | 1KE-19-00025 CN/1KE-20-00012 CN |
| STATE OF ALASKA, DEPARTMENT | ) | (Consolidated) |
| OF FAMILY & COMMUNITY | ) | |
| SERVICES, OFFICE OF CHILDREN'S | ) | MEMORANDUM OPINION |
| SERVICES, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2013 – February 28, 2024 |
| | ) | |
| | ) | |
| JED H., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF FAMILY & COMMUNITY | ) | |
| SERVICES, OFFICE OF CHILDREN'S | ) | |
| SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

_____

\*      Entered under Alaska Appellate Rule 214.

Appeals from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Daniel Doty, Judge.

Appearances: Michael L. Barber, Barber Legal Services, Boston, Massachusetts, for Appellant Jan B. Chris Peloso, Juneau, for Appellant Jed H. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Carney, Justice, not participating.]

## I. INTRODUCTION

A mother and father appeal the termination of their parental rights regarding three children. Both parents argue the Office of Children's Services (OCS) failed to make active efforts toward reuniting their family. The father, who is the biological parent of only one of the children, also argues that he did not cause that child to be in need of aid, he did not fail to remedy the conditions placing the child at substantial risk of harm, and termination of his parental rights was not in the child's best interests. We conclude there was no error in the court's legal determinations or findings. We thus affirm the court's order terminating parental rights.

## II. FACTS AND PROCEEDINGS

### A. Background Facts

Jan B. is the mother of Ash, Nell, and John,[1] all of whom are Indian children as defined by the Indian Child Welfare Act (ICWA).[2] Jed H. is John's father. All three children are members of the same Tribe, and Jed is a member of a different Tribe.

---

[1] We use pseudonyms to protect the family's privacy.

[2] *See* 25 U.S.C. § 1903(4) (" 'Indian child' means any unmarried person who is under age eighteen and is . . . a member of an Indian tribe.").

Jan and Jed had been in an on-and-off relationship for about 12 years at the time of the termination proceedings at issue in this appeal. They had a history of domestic violence against each other, including instances of violence when their children were present. Both parents had also been violent toward other adults. OCS received at least one report that Jan had been physically abusive toward Nell.

An OCS caseworker also expressed concern that, at times, both parents became intoxicated with no other adult present to care for the children. Jan and Jed used marijuana together while caring for the children. Jan also used methamphetamine, and there was testimony indicating that the parents had used methamphetamine together.

In response to these concerns, OCS petitioned the superior court for adjudications that the children were in need of aid and sought temporary custody. The court concluded the children were in need of aid and awarded OCS temporary custody of Ash in 2015, of Nell in 2019, and of John in 2020. After taking temporary custody, OCS placed the children with relatives or in foster care.

### B. Efforts To Reunite The Family

OCS had been working with Jan and Jed for several years before the proceedings at issue in this appeal. OCS caseworkers began working with Jan in 2004 and developed a case plan for Jed in 2017.

After removing the children from Jan and Jed's custody, OCS provided referrals and worked with both the children's Tribe and Jed's Tribe to connect the parents with supportive services, including assistance with housing, mental health counseling, domestic violence counseling, and psychological and neurological assessments. OCS had regular contact with representatives of the children's Tribe and invited a social worker employed by Jed's Tribe to case planning meetings at Jan's request. In August 2020, an OCS caseworker connected Jed with the children's Tribe for individual counseling, gave him a ride to his appointment, helped him check in, and

encouraged him to continue attending counseling. Another caseworker later referred Jed to continued services through the children's Tribe to support him in maintaining sobriety.

OCS also developed multiple case plans for Jan and Jed and reached out to them to monitor their progress. OCS made several referrals for Jan and provided her with monthly bus passes.

Jan and Jed said they sometimes had difficulty communicating with OCS. Both parents also expressed frustration regarding incidents in which OCS had cancelled, failed to arrange, or been late to scheduled visits with the children. Both parents engaged in services and treatment independently of OCS and indicated it was their preference to work on their own without engaging OCS. A former OCS caseworker later testified that Jan and Jed had made plans and taken some steps independently of OCS, but said those efforts had not been effective at addressing the conditions causing the children to be in need of aid.

OCS asked both Jan and Jed to sign release-of-information forms to allow OCS to gather details regarding services they were receiving from other providers, but the parents refused to do so. An OCS caseworker testified it had been difficult to monitor Jan and Jed's progress without these releases and noted that the parents' noncooperation had made it "incredibly difficult" to determine whether the children would be safe in their parents' care.

C. **Termination Proceedings**

OCS petitioned the superior court to terminate parental rights in January 2022. After a trial the superior court granted the petition. The court found there was clear and convincing evidence that both parents had abandoned the children and placed

them at substantial risk of mental injury or physical harm.[3]  It found there was clear and convincing evidence that Jan and Jed had failed to remedy the conditions causing the children to be in need of aid.  It also found there was evidence beyond a reasonable doubt, based on testimony of expert witnesses, that the children were likely to face serious emotional or physical damage if they were returned to Jan or Jed's care.  And it found there was clear and convincing evidence that OCS had made active efforts to prevent the breakup of the family.  Finally, it found by a preponderance of the evidence that terminating Jan and Jed's parental rights was in the best interests of all three children.  The court then ordered the termination of Jan and Jed's parental rights.

Jan and Jed appeal.

## III.   STANDARD OF REVIEW

We review the superior court's factual findings for clear error.[4]  "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the party prevailing [in the superior court] leaves us 'with a definite and firm conviction that a mistake has been made.' "[5]  We apply our independent judgment to decide whether the superior court's factual findings satisfy the requirements of ICWA and the CINA statutes.[6]  Whether a child is in need of aid is a factual determination that

---

[3]     *See* AS 47.10.088 (requiring finding, by clear and convincing evidence, that "the child has been subjected to conduct or conditions described in AS 47.10.011" as prerequisite to termination of parental rights); AS 47.10.011(1) (abandonment), .011(6) (substantial risk of substantial physical harm), .011(8)(B) (substantial risk of mental injury).

[4]     *Dale H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 235 P.3d 203, 209 (Alaska 2010).

[5]     *Violet C. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 1032, 1037 (Alaska 2019) (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

[6]     *Jimmy E. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 529 P.3d 504, 512 (Alaska 2023).

we review for clear error.[7] Whether OCS made "active efforts" to reunify a family is a mixed question of law and fact.[8] When considering mixed questions, we review findings of fact for clear error and apply our independent judgment to questions of law.[9]

## IV. DISCUSSION

Both parents argue OCS failed to make active efforts to reunite their family.[10] Additionally, Jed argues it was clear error for the court to find the following: he abandoned John by refusing to engage with OCS, he placed John at risk of harm, he failed to remedy the conditions causing John to be a child in need of aid, and termination of his parental rights was in John's best interests. Seeing no error of law or clear error in factual findings, we affirm the court's order terminating parental rights.[11]

**A. The Superior Court Did Not Err By Concluding That OCS Made Active Efforts To Provide Remedial Services And Rehabilitative Programs Designed To Reunify The Family.**

Both Jan and Jed challenge the superior court's conclusion that OCS made active efforts to reunify their family. They argue OCS should have done more to overcome their reluctance to work with OCS by working more closely with the children's Tribe and Jed's Tribe. Jan also argues OCS should have done more to keep

---

[7] *Duke S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1127, 1132 (Alaska 2018).

[8] *Mona J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 511 P.3d 553, 560 (Alaska 2022).

[9] *Jimmy E.*, 529 P.3d at 513.

[10] *See* 25 U.S.C. § 1912(d) (requiring "active efforts . . . to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family"); CINA Rule 18(c)(2)(B) (same).

[11] In his reply brief, Jed argues for the first time that OCS failed to prove his child would likely suffer serious harm if returned to his care. Because Jed waived this issue by failing to raise it in his opening brief, we decline to address it. *See Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010).

in contact with her, and Jed argues OCS should have referred him to additional services. The parents contend that these flaws rendered OCS's efforts less than "active." We disagree.

Because Ash, Nell, and John are Indian children,[12] the superior court could terminate Jan and Jed's parental rights only upon proof by clear and convincing evidence "that active efforts [had] been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts [had] proved unsuccessful."[13]

The superior court found there was clear and convincing evidence that OCS had made active efforts and that those efforts had been unsuccessful. The court cited the duration of OCS's engagement with the family, including the number of case managers involved and case plans developed. The court also credited OCS's attempts to provide services to Jan, organize meetings at the offices of the children's Tribe, communicate with the parents, arrange drug tests for Jan, and schedule virtual visits with the children. The court found these efforts had not been successful "primarily because of [Jan]'s refusal to engage with OCS or in services." The court also found Jed "ha[d] not engaged with OCS and refused to work with OCS."

We agree with the superior court. Although OCS's efforts were not perfect, its attempts to engage and support the family over the entire history of this case satisfied the active efforts standard.[14]

Jan argues OCS should have worked harder to include a particular social worker from Jed's Tribe in case-planning meetings. But OCS did make efforts to

---

[12]    *See* 25 U.S.C. § 1903(4).

[13]    25 U.S.C. § 1912(d); CINA Rule 18(c)(2)(B).

[14]    *See Miranda T. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 524 P.3d 1105, 1118 (Alaska 2023) ("OCS's efforts do not need to be perfect.").

involve this social worker, and Jan's refusal to sign releases and both parents' lack of progress showed that delaying trial to allow further involvement by this social worker would have been unlikely to affect the parents' progress.

Similarly, Jed suggests OCS should have worked with the children's Tribe to build trust with the parents and gather information about their progress. But OCS did coordinate directly with the Tribe to provide services to Jed. An OCS caseworker referred Jed to the Tribe for individual therapy, gave him a ride to his appointment, and encouraged him afterward to continue attending counseling. OCS included representatives of the Tribe in safety planning meetings and home visits early in John's life. And OCS worked through the Tribe to set up a case planning meeting with Jed in May 2022, but he did not attend the meeting.

OCS's efforts in this case, including its efforts to engage the parents in services with the Tribes, were active.[15] As we have previously recognized, OCS's "[f]ailed attempts to . . . obtain information" from parents like Jan and Jed who are reluctant to work with OCS may qualify as active efforts "if the parent's evasive or combative conduct 'rendered provision of services practically impossible.' "[16] Although OCS could have been more proactive in addressing the parents' concerns and encouraging them to make progress on their case plans, Jan and Jed impeded the effectiveness of OCS's efforts by refusing to participate in case planning or allow OCS

---

[15] *See* 25 C.F.R. § 23.2(5) (2023) (identifying "facilitating the use of remedial and rehabilitative services provided by the child's Tribe" as example of "active efforts").

[16] *Sylvia L. v. State, Dept. of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 433 (quoting *E.A. v. State, Div. of Fam. & Youth Servs.*, 46 P.3d 986, 990 (Alaska 2002)).

to gather information from other service providers.[17] Considering OCS's efforts as a whole, we agree with the superior court's conclusion that OCS made active efforts to reunify Jan and Jed's family.

> **B.    The Superior Court Did Not Clearly Err By Finding That Jed Subjected John To Conduct Or Conditions That Made Him A Child In Need Of Aid.**

Jed challenges the superior court's finding that he subjected John to conduct or conditions causing him to be a child in need of aid. Jed argues that Jan was solely responsible for subjecting John to those conditions and that he could not have been responsible for those conditions because he never had "custody or control" over John. But considering the evidence of a pattern of domestic violence between Jan and Jed in which both parents committed acts of violence, we conclude it was not clear error for the court to find Jed subjected John to conditions causing him to be in need of aid.

Before the superior court may order the termination of parental rights, it must find by clear and convincing evidence that the parent has caused the child to be subjected to conduct or conditions causing the child to be in need of aid.[18] The court may find this requirement is satisfied if there is clear and convincing evidence of "a

---

[17]    While we agree with the superior court's conclusion regarding active efforts in this case, we note that OCS introduced little evidence to support its argument that the parents' refusal to sign releases impeded its ability to make referrals for services. Although the record supports a finding that the parents' refusal to sign releases made it difficult for OCS to monitor their progress, difficulty monitoring progress alone does not excuse OCS from making active efforts. If the refusal to sign releases prevents OCS from making referrals, OCS has the burden of proving that fact to show that further efforts would not have been possible. Otherwise, OCS must offer services even if it is unsure whether it will be able to document the outcomes of those services. *See Mona J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 511 P.3d 553, 562 (Alaska 2022) ("[T]he analysis of active efforts . . . turns primarily on OCS's actions, not on the parent's response.").

[18]    AS 47.10.088(a)(1); CINA Rule 18(c)(1)(A) (citing AS 47.10.011).

substantial risk that the child will suffer substantial physical harm[] as a result of conduct by or conditions created by the child's parent"[19] or "conduct by . . . the parent . . . [that has] placed the child at substantial risk of mental injury as a result of . . . a pattern of . . . terrorizing . . . behavior that would, if continued, result in mental injury."[20] We have recognized that acts of domestic violence can be "terrorizing" and that "witnessing domestic violence is mentally harmful to children."[21] And we have held that a pattern of domestic abuse between parents may support a finding that a child is at risk of mental injury, even when the abuse occurred before the child's birth.[22]

In this case, the record supports the superior court's findings that there was clear and convincing evidence that Jed subjected John to conditions causing him to be at substantial risk of physical harm or mental injury.[23] In particular, substantial evidence supports the superior court's finding that "[t]here [was] a lengthy history of domestic violence" between Jan and Jed, including "violence by each parent," that placed their children at risk of future physical harm or mental injury.

---

**19**      AS 47.10.011(6).

**20**      AS 47.10.011(8)(B)(i).

**21**      *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 79 P.3d 50, 55 (Alaska 2003) (citing *In re J.A.*, 962 P.2d 173, 178 (Alaska 1998); *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 140 (Alaska 1997)).

**22**      *Philip J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 314 P.3d 518, 533 (Alaska 2013); *see also Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1257 (Alaska 2010) (holding AS 47.10.011(8)(B)(i) "does not require that the children be physically present when there is domestic violence" to support finding risk of mental injury).

**23**      Jed also argues the superior court erred by finding he had abandoned John. We do not address this argument because we affirm the finding that Jed caused John to be in need of aid by subjecting him to conditions that caused him to be at substantial risk of physical harm or mental injury. *See Annette H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 450 P.3d 259, 265-66 (Alaska 2019).

The superior court found Jed was partly or wholly responsible for many of the instances of domestic violence, and the record supports that finding. For example, the superior court admitted into evidence Jan's allegation in a domestic violence protective order filing that Jed had choked, slapped, and punched her, and that in one instance Jed had cut the clothes she was wearing with a knife and threatened her family. One OCS caseworker testified that, based on the parents' history, it appeared to be "inevitable" that John would be exposed to domestic violence if he remained in Jan and Jed's care. When conditions in the home are likely to result in future physical harm to a child, OCS "is not required to wait to intervene until a child has suffered actual harm."[24] Similarly, when a pattern of domestic violence in the home places a child at risk of mental harm, the superior court may consider the possibility that the domestic violence will continue.[25]

There is clear and convincing evidence to support the superior court's finding that Jed's violent conduct subjected John to a substantial risk of physical harm or mental injury if John were to be reunited with his parents. Thus the superior court did not clearly err by finding Jed subjected John to conduct or conditions that caused him to be a child in need of aid.[26]

---

[24] *Martin N.*, 79 P.3d at 54.

[25] *See id.* at 55 (noting AS 47.10.011(8) directs courts to consider "whether the child would be mentally injured if the behavior is 'continued,' " contemplating analysis of future harm).

[26] *See Reed S. v. State, Dep't of Health and Soc. Servs., Off. of Child.'s Servs.*, 522 P.3d 182, 192 (Alaska 2022) ("Conflicting evidence is generally insufficient to overturn the superior court [on a factual issue], and we will not reweigh evidence when the record provides clear support for the superior court's ruling." (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008))).

**C.** **The Superior Court Did Not Clearly Err By Finding That Jed Failed To Remedy The Conduct And Conditions That Placed John At Substantial Risk Of Harm.**

Jed also challenges the superior court's finding that he failed to remedy the conduct or conditions that placed John at substantial risk of harm. He argues the court improperly focused on OCS's lack of knowledge about his progress and did not give him credit for positive steps he had taken. But considering Jed's lengthy history of domestic violence against Jan and his failure to complete an intervention program designed to address his violent behavior, we conclude it was not clear error for the court to find Jed had failed to remedy the conditions placing John at substantial risk of harm.

Before ordering the termination of parental rights, the superior court must find by clear and convincing evidence that the parent "has not remedied the conduct or conditions in the home that place the child at substantial risk of harm"[27] or "failed, within a reasonable time, to remedy" that conduct or those conditions "so that returning the child to the parent would place the child at substantial risk of physical or mental injury."[28] When making that finding, the court "may consider any fact relating to the best interests of the child."[29] The central question when assessing whether a parent has met this standard is "whether [the parent] ha[s] remedied the problems that placed [his] children at risk and gained the necessary skills so that the children could be safely returned to [his] care."[30]

---

[27]    AS 47.10.088(a)(2)(A); CINA Rule 18(c)(1)(A)(i).

[28]    AS 47.10.088(a)(2)(B); CINA Rule 18(c)(1)(A)(ii).

[29]    AS 47.10.088(b).

[30]    *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 789 (Alaska 2019) (alterations in original) (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1260 (Alaska 2010)).

The superior court found Jed had failed to remedy the conditions causing John to be in need of aid because Jed had "refused to engage with OCS" and had not completed a batterer's intervention program, even though such a program was part of his case plan. Jed argues the court overlooked steps he had taken; for example, he testified that he had been working on anger management with his counselor and "read through" a workbook related to domestic violence prevention. But there was substantial evidence in the record that Jed had engaged in domestic violence against Jan for several years. And Jed does not dispute that he never completed a batterer's intervention program.

Although Jed's testimony offers some evidence of efforts to remedy the conditions that caused John to be in need of aid, we "will not reweigh evidence when the record provides clear support for the superior court's ruling" on a factual issue.[31] Considering the record as a whole, the superior court did not clearly err by finding that Jed failed to remedy the conduct and conditions that placed John at a substantial risk of harm.

### D.  The Superior Court Did Not Clearly Err By Finding That Termination Of Jed's Parental Rights Was In John's Best Interests.

Finally Jed challenges the superior court's finding that terminating his parental rights was in John's best interests. He argues the court erred by failing to consider some of the statutory best interests factors. He also argues the court improperly held him responsible for Jan's history with her other children. We disagree.

Before terminating parental rights, the superior court must find "by a preponderance of the evidence that termination of parental rights is in the best interests

---

[31]  *Reed S.*, 522 P.3d at 192.

of the child."[32]   When making this finding, the court "may consider the factors in AS 47.10.088(b) as well as 'any other facts relating to the best interests of the child.' "[33]

Jed argues the superior court erred by failing to consider some of the statutory best interests factors.  But the superior court was not required to make written findings regarding each factor; it is sufficient that the court made written findings regarding the factors it considered most relevant given the facts of this case and the testimony developed at trial.[34]

In this case, the superior court's best interests finding was primarily based on the value of providing a permanent placement for John.  The court noted John's foster parents were willing and able to provide permanency.  Testimony from an OCS caseworker and one of John's foster parents supported that finding.

The court also concluded that Jan and Jed's "lack of progress" and "the likelihood of the child[ren] being harmed by" Jan or Jed supported its finding that termination was in the children's best interests.  An OCS caseworker's testimony at the termination trial supported these findings.

Jed argues the superior court erred in its best interests determination by holding him responsible for Jan's history with Ash and Nell.  However, he offers no reason to doubt the superior court's finding, by a preponderance of the evidence, that it was in John's best interests to terminate Jed's parental rights to achieve a permanent placement.

---

[32]   CINA Rule 18(c)(3); *see also* AS 47.10.088(c).

[33]   *Bob S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 400 P.3d 99, 109 (Alaska 2017) (quoting *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1271 (Alaska 2014)).

[34]   *Bob S.*, 400 P.3d at 109 (stating court "is not required to consider or give particular weight to any specific factor").

Because trial testimony supported the superior court's finding that terminating Jed's parental rights was in John's best interests, the court did not clearly err and we will not reweigh the evidence to reach a different result.[35]

## V.    CONCLUSION

We AFFIRM the superior court's order terminating Jan and Jed's parental rights regarding Ash, Nell, and John.

---

[35]    *See Reed S.*, 522 P.3d at 192.